UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

E. THOMAS MERRITT, III, ELIZABETH
W. GRANGER, and TOWNLEY SHEAP,
on behalf of themselves and all others
similarly situated,

                                Plaintiffs,

    v.

WELLPOINT, INC., d/b/a/ ANTHEM
HEALTH PLANS OF VIRGINIA, INC.,
and/or ANTHEM BLUE CROSS AND
BLUE SHIELD,

                                Defendant.

Action No. 3:08–CV–272

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant's Motion to Dismiss Counts II and III and to Strike Plaintiff's Proposed Collective Definition (Docket No. 9). For the reasons stated at the hearing and discussed below, Defendant's Motion will be GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiffs E. Thomas Merritt, III ("Merritt"), Elizabeth W. Granger ("Granger"), and Townley Sheap ("Sheap") (collectively "Plaintiffs") filed a Complaint against WellPoint, Inc. and its subsidiary Anthem Health Plans of Virginia, Inc. (d/b/a/ Anthem Blue Cross and Blue Shield) ("WellPoint") on May 2, 2008. The Complaint was amended on August 26, 2008 and contains five counts: Count I: Disparate

1

Treatment under the Age Discrimination in Employment Act ("ADEA") and the Older

Worker Benefit Protection Act ("OWBPA"); Count II: Disparate Impact under the

ADEA; Count III: Violation of the OWBPA waiver requirements;[1] Count IV: Improper

consideration of protected leave under the Family and Medical Leave Act ("FMLA");

and Count V: Violation of the Americans with Disabilities Act ("ADA").   Plaintiffs

filed this Complaint on behalf of themselves and all others similarly situated using a

collective definition ("Termination Collective").  The Termination Collective is defined

as:

> all persons aged 40 or older who were employed in Wellpoint's Virginia
> operations and whose discharge, forced separation, or other involuntary
> separation from Wellpoint during the period from January 2005 through the
> present resulted from Wellpoint's policy or practice treating age (and its
> related characteristics) as negative factors in determining which
> employees to retain and which to terminate (variously described by
> Wellpoint as "reductions in force," "position eliminations," "resignations,"
> "retirements," and "cause" terminations) and/or from the adverse age
> impact of Wellpoint's use of subjective termination selection processes
> and/or the use of analytics/metrics in the termination selection process.
> Plaintiffs Merritt, Granger, and Sheap are representatives of this collective.

(Am. Compl. ¶ 12.)  Plaintiffs propose two "Waiver Sub-Collectives" within the main

Termination Collective.  Waiver Sub-Collective A is defined as:

> all persons aged 40 or older who were employed in Wellpoint's Virginia
> operations, were discharged during the period from January 2005 through
> the present, and were offered "Severance Pay" conditioned upon signing
> a General Release and Waiver Agreement, including a release and waiver
> of age discrimination claims that (1) did not include 45 days to consider the
> release of waiver, and (2) did not include the ages and job titles of all
> persons terminated by Wellpoint and retained by Wellpoint as part of the

---

[1] Count III, relating to the OWBPA, is only brought by Merritt and Granger as
individuals and representatives of those plaintiffs "similarly situated."  Plaintiff Sheap
has not been included in Count III.

termination program. No member of Waiver Sub-Collective A executed the General Release and Waiver Agreement. Representative Plaintiffs Merritt and Granger are representative of this Waiver Collective.

(Am. Compl. ¶ 14.) Waiver Sub-Collective B relates to the same class of people, with one exception—Sub-Collective B members executed the General Release and Waiver Agreement ("Release"). Plaintiffs Merritt and Granger did not sign the Releases, but they were offered the Releases and therefore purport to act as representatives of Waiver Sub-Collective B. (Am. Compl. ¶ 15.)

Plaintiff asserts that as of January 2005, WellPoint began to systematically reduce the workforce of employees age 40 and older and replaced such workers with younger employees. (Id. ¶ 18.) The Complaint alleges that a specific plan was crafted to reduce employment percentages that used "impermissible, age-based stereotypes, including the stereotype that older employees, including older employees with histories of medical conditions or disabilities, were less productive or more costly employees." (Id. ¶¶ 38–41.) This system resulted in the termination of large numbers of older workers. (Id. ¶ 49.) Merritt was 56 years old when he was terminated and had been employed by WellPoint and its predecessor for 31 years. (Am. Compl. ¶ 7.) Granger was 53 years old when she was terminated and had been employed by WellPoint and its predecessor for 20 years. (Id. ¶ 8.) Sheap was 47 years old when she was terminated and had been employed by WellPoint and its predecessor for 18 years. (Id. ¶ 9.)

Merritt was informed that his position had been eliminated for "synergy savings," which he alleges was pretextual because his job duties continued after his

3

termination. (Id. ¶¶ 72, 78.) Granger was told she would be terminated "not for any performance problem" but because the position was being eliminated. (Id. ¶ 85.) Hers was the only position eliminated in her section and her duties also continued past her termination. (Id. ¶¶ 86–91.) Sheap, even with a positive employment history, was terminated because she violated HIPAA, which was deemed "inappropriate conduct." She alleges this was pretextual and was used as a way to terminate her based on age. (Id. ¶¶ 97–105.)

The Complaint further asserts that these terminations were a result of a widespread termination of older employees while retaining younger employees. (Id. ¶¶ 119–27.) Plaintiffs maintain that WellPoint, in an effort to avoid being sued by older workers, inasmuch forced terminated employees to sign Releases which included release of age discrimination claims. Plaintiffs were presented with the Releases, but refused to sign. Because of this, Plaintiffs Merritt and Granger bring the OWBPA claim in Count III.

Defendants filed the current Motion to Dismiss pursuant to Rule 12(b)(6) and 12(f) on September 16, 2008. Defendant requests that this Court (1) Strike the Collective Definition provided in the Complaint; (2) Dismiss Count II (Disparate Impact) because Plaintiffs only identify an intentional pattern of discrimination, which is, by definition, a claim of Disparate Treatment; (3) Dismiss Count III (OWBPA violation) because Plaintiffs lack standing to bring a claim under the OWBPA on behalf of themselves or those in Waiver Sub-Collective A or B; and/or (4) Dismiss

4

Count III because the OWBPA does not give rise to an independent cause of action, and if it does, declaratory or injunctive relief is the only proper remedy.

## II. DISCUSSION

### A. Standard of Review

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it. Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Thus, in ruling on a Rule 12(b)(6) motion, a court must regard as true all of the factual allegations in the complaint, Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007), as well as any facts that could be proved that are consistent with those allegations, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and view those facts in the light most favorable to the plaintiff, Christopher v. Harbury, 536 U.S. 403, 406 (2002). But, because the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," the plaintiff must allege facts that show that its claim is plausible, not merely speculative. Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964, 1966 (2007); see Fed. R. Civ. P. 8(a)(2). The court does not have to accept legal conclusions that are couched as factual allegations, Twombly, 127 S.Ct. at 1964, or "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). But, the plaintiff does not have to show that he is likely to obtain relief; if the complaint alleges—directly or indirectly—each of the

elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim. Twombly, 127 S.Ct. at 1969 & n.8.

Under Rule 12(f), a Court may strike "from any pleading any insufficient defense or redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). However, this is a "drastic remedy which is disfavored by the courts and infrequently granted." Int'l Longshoremen's Ass'n v. Virginia Int'l Terminals, Inc., 904 F. Supp. 500, 504 (E.D. Va. 1995); see First Fin. Sav. Bank v. Am. Bankers Ins. Co., 783 F. Supp. 963, 966 (E.D.N.C. 1991); United States v. Fairchild Indus., Inc., 766 F. Supp. 405, 408 (D. Md. 1991).

## B. Specific Arguments for Dismissal

### 1. Collective Definition

Defendant asserts that Plaintiffs' Termination Collective definition is improper and therefore should be stricken under Fed. R. Civ. P. 12(f). The authority on which Defendant relies is that the definition is an improper "fail safe" definition because membership in the class is dependent on a legal inquiry of determination of liability. At the hearing, Plaintiffs indicated that they had no objection to amending the collective definition in order to redefine the collective without requiring a legal determination. In responding to Defendant's challenge, Plaintiffs' counsel stated that the purpose of the collective definition was so Plaintiffs could assert claims for themselves and those who are similarly situated by their termination as part of personnel reductions. Plaintiffs' counsel indicated that demonstrating intentional

6

discrimination in order to fall within the collective definition is not a requirement. Because Plaintiffs agreed to amend the definition pursuant to the Court's suggestion at the hearing, Defendant's Motion to Strike is DISMISSED as moot. Plaintiffs are DIRECTED to present an amended collective defintion, if they wish to proceed as a collective in this action.

### 2. Plaintiffs' Disparate Impact claim

Defendant asserts that Plaintiff has failed to properly identify a disparate impact claim in the Complaint and therefore Count II should be dismissed. The ADEA prohibits employers from failing or refusing to hire or discharge "any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2006). There are two types of claims that arise when an employer appears to have violated the ADEA: disparate treatment and disparate impact. When disparate treatment is alleged, "liability depends on whether the protected trait . . . actually motivated the employer's decision." Hazen Paper Co. v. Biggins, 507 U.S. 607, 610 (1993). If the employee's age played a role in the employer's decision-making process and had an influence on the outcome, the proper claim is disparate treatment. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000); Hazen Paper, 507 U.S. at 610. "Proof of discriminatory motive is critical" in disparate treatment cases. Hazen Paper, 507 U.S. at 610.

Disparate impact, on the other hand, involves "employment practices that are facially neutral in their treatment of different groups but that, in fact, fall more harshly on one group than another and cannot be justified by business necessity." Id. No

7

discriminatory motive is required when disparate impact is alleged. Teamsters v. United States, 431 U.S. 324, 325–26 n.15 (1977). However, the employee must isolate and identify "the specific employment practices that are allegedly responsible for any observed statistical disparities." Smith v. City of Jackson, Miss., 544 U.S. 228, 241 (2005); see Wards Cove Packing, Co. v. Atonio, 490 U.S. 642, 656 (1989); Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 994 (1988); Reed v. MCI, Inc., 2005 U.S. Dist. LEXIS 42267, at *6–8 (E.D.N.C. Oct. 13, 2005).

A plaintiff is permitted to present both disparate treatment and disparate impact as claims for relief in the same case. Burwell v. E. Air Lines, 633 F.2d 361, 369 (4th Cir. 1980). In a recent case, the court denied a motion to dismiss because the complaint sufficiently alleged that the employer "engaged in systematic termination of employees over the age of 40, older employees with serious medical conditions, older higher paid employees, and other employees whose insured family members suffer from serious medical condition[s]." Conron v. Novatec, Inc., No. RDB-08-45, 2008 WL 2559386, at *3–4 (D. Md. June 23, 2008). This, coupled with the allegation that the employer reviewed employees' medical insurance coverage and medical conditions, properly asserted a claim of disparate impact. Id. Specifically, the complaint alleged that the employer reviewed the medical insurance coverages, claim histories, ages, medical conditions, and disabilities, then associated such information with the "costs associated with employment," and this was sufficient to survive a motion to dismiss. Id. at *4. Additionally, the complaint alleged that the employer changed their policies to a cost-based system that "resulted in the termination of older workers." Id. Because the plaintiff provided an adequate

8

causation argument by alleging that the employer's intentions and seemingly neutral practice resulted in his termination, the court denied the motion to dismiss because both disparate impact and treatment were pled.  Id.

In the case before the Court, WellPoint alleges that Plaintiffs have filed a disparate impact claim, which is nothing more than a disparate treatment claim in disguise.  Defendant cites several cases from outside this District in support of this assertion, however, all of the cases cited are from opinions concerning motions for summary judgment, which is a more burdensome standard than the one before the Court.  At the Motion to Dismiss stage the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," and allege facts that show that its claim is plausible, not merely speculative.  Twombly, 127 S.Ct. at 1964, 1966.

Plaintiffs have identified several alleged "arrangements" made by WellPoint that had a disparate impact on older workers, including: "analytical models" (Am. Compl. ¶ 40), a "selection process which considered age, and age related characteristics, as negative factors" including medical care or leave (Am. Compl. ¶¶ 49, 60, 113), the use of "metrics," which disproportionately evaluated and/or impacted older employees (Am. Compl. ¶ 118, 119), and a consideration of "age and/or age related characteristics in the 'cost' of maintaining an older workforce" (Am. Compl. ¶ 139).  Such considerations defeat Defendant's assertion that Plaintiffs' claim of disparate impact is merely a disparate treatment claim dressed up in "impact clothing."  The proper inquiry at this stage is to determine whether Plaintiffs have "alleged enough facts to state a claim of relief that is plausible on its face,"

9

Twombly, 127 S.Ct. at 1974, and for this reason, Defendant's Motion to Dismiss Count II for Failure to State a Claim of Disparate Impact is DENIED.

### 3.  OWBPA Standing for Sub-Collective A

Defendant also claims that Plaintiffs do not have standing to bring Count III (violations of the OWBPA) on behalf of themselves or those in Waiver Sub-Collective A.  Plaintiffs Merritt and Granger[2] purport to bring a claim under the OWBPA alleging a violation of 29 U.S.C. §§ 626(f)(1)(F)(ii) and (f)(1)(H).  The OWBPA provides that any waiver of rights to sue under the ADEA must be knowing and voluntary, and "if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement." 29 U.S.C. § 626(f)(1)(F)(ii) (2006).  Further, section 626(f)(1)(H) requires that if a waiver is requested in connection with an exit incentive or other employment termination program, the document offered by the employer must inform the employee of "the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program."  29 U.S.C. § 626(f)(1)(H) (2006).  Plaintiff alleges that the Releases signed by the terminated employees were in violation of the OWBPA because they "failed to provide age and job title information regarding terminated employees and further failed to provide the 45-day period to consider the releases."  (Am. Compl. ¶ 128.)  Plaintiffs Merritt and Granger did not sign any release

---

[2] Plaintiff Sheap is not a party to Count III.

10

upon their termination, but they filed this lawsuit to represent those employees who did and those who did not sign the Releases.

In order to establish standing, three criteria must be satisfied: (1) "the plaintiff must have suffered an injury in fact . . . which is (a) concrete and particularized . . . and (b) actual and imminent," (2) a causal connection between the injury and the conduct must exist, and (3) it must be likely that the "injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). There appears to be no Fourth Circuit precedent on standing specific to the OWBPA, however, the Third Circuit's precedent provides helpful guidance. In Lawrence v. Nat'l Westminster Bank New Jersey, a discharged employee brought action against his former employer alleging a violation of the waiver provision of the OWBPA. 98 F.3d 61, 61 (3d Cir. 1996). Lawrence never signed what he believed to be an illegal termination agreement, but sued for the purported violation of the OWBPA. Id. at 72. The district court found Lawrence lacked standing because he did not sign the agreement, and the Third Circuit agreed. Id. Because he never signed the agreement, he never waived his rights under the Act, had no cognizable injury, and therefore, could not establish a violation of the OWBPA waiver statute. Id. The court concluded by stating that "[t]he alleged effort to induce him to sign the agreement could not result in a violation of OWBPA's waiver provisions." Id; see also Maguire v. Citizens Fin. Group, Inc., 04-2496, 2005 WL 388564, at *2–3 (E.D. Pa. Feb. 16, 2005) (holding that Plaintiff failed to aver that he signed the release, therefore he failed to allege a violation of the waiver provisions of the OWBPA and had no standing to assert a claim).

11

In this case, Plaintiffs do not claim, and in fact, admit, that they did not sign the purported illegal waivers. Plaintiff's Response attempts to assert that simply presenting the waiver to Plaintiffs (and the members of both Waiver Sub-Collective A and B) was enough to violate the OWBPA waiver requirement because all of the parties were "similarly situated." (Pls.' Resp. in Opp'n 8–13.)[3] This Court finds the authority from the Third Circuit persuasive, therefore simply being offered a waiver agreement is not injury under the OWBPA. As a result, Plaintiffs Merritt and Granger do not have standing to allege a violation of the OWBPA.

### 4. OWBPA Standing for Sub-Collective B

In the same vein, Defendant alleges that Plaintiffs cannot represent Sub-Collective B, the class of employees who <u>did</u> sign the waivers presented by WellPoint. As discussed above, persuasive authority from the Third Circuit suggests that Plaintiffs did not suffer an injury-in-fact simply by being offered the waiver. To be injured and have standing under the OWBPA, they must have <u>signed</u> the waiver. Because Plaintiffs suffered no injury, they cannot assert standing to represent those who may have suffered injury under the OWBPA, Sub-Collective B. It may be true that Defendant violated the OWBPA by not providing the statutorily required type of notice or allowing the proper amount of time to elapse for consideration, as Plaintiff suggests, but without suffering any real injury under the OWBPA, Plaintiffs are not in

---

[3] The "similarly situated" standard applies only to the ADEA, and this claim is specific to the OWBPA, which requires actual cognizable injury.

a position to assert rights on behalf of Sub-Collective B.[4]  For these reasons, the

Motion to Dismiss Count III for lack of standing is GRANTED because Plaintiffs have

suffered no injury and cannot represent the sub-class of employees who may have

suffered injury, or as discussed above, those who suffered no injury under the

OWBPA.[5]  Count III will therefore be DISMISSED WITHOUT PREJUDICE.

     5.  OWBPA's independent cause of action

     Defendant's Motion presented a further argument as to the inapplicability of

the OWBPA to this case because the OWBPA does not provide a private right of

action.  This Court need not analyze this argument because it has found that Plaintiffs

lack standing to assert a claim under the OWBPA.


III.  CONCLUSION

     For the above reasons, Defendant's Motion to Strike the Collective Definition

under Rule 12(f) is DISMISSED as moot and Plaintiffs are DIRECTED to present an

alternative Collective Definition as suggested at the hearing; the Motion to Dismiss

---

[4]  Plaintiffs indicated at the hearing that another plaintiff, Debbie Johnson, has opted
in as a former employee who signed the OWBPA waiver.  This may potentially give
Plaintiffs standing as to Count III, if Ms. Johnson is properly added as a party.
However, Defendant's counsel noted that they may object to the addition of Ms.
Johnson as a plaintiff because of a failure to exhaust administrative remedies.  This
Court makes no decision in this Opinion as to the legitimacy of adding Ms. Johnson
as a Plaintiff, but does note that should a former employee who signed the waiver be
joined as a party, standing may exist as to Count III.

[5] It should be noted, however, that Plaintiffs still may represent any similarly situated
employees within the collective for violations of the ADEA.  Dismissal of Count III
only relates to the OWBPA.

for Failure to State a Claim for Disparate Impact is DENIED; and the Motion to

Dismiss Count III is GRANTED and Count III is DISMISSED WITHOUT PREJUDICE.

Let the Clerk send a copy of this Order to all counsel of record.

It is SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 15th day of January 2009

14

/s/

James R. Spencer
Chief United States District Judge